## LUMBERMAN'S MIN. CO. v. GILCHRIST et al.

### (Circuit Court of Appeals, Sixth Circuit. May 1, 1893.)

### No. 36.

SHIPPING—CHARTER PARTY—BREACH—DEFENSES.

A vessel was chartered to carry eight cargoes of iron ore from Escanaba, Mich., to Lake Erie ports, during a given season of lake navigation. Her seventh voyage was completed late in the season, but she was then requested, late in November, to go to Escanaba for the eighth cargo, and proceeded thither on the promise of the charterer's agent that she would be loaded. The charterer allowed four days for loading, and if she had been loaded in that time she could have completed the trip, but, owing to the fact that the ore was frozen, her loading was not in fact completed until the next spring. *Held,* that her owners were not liable for advanced freight paid by the charterer for the transportation of another cargo during that season, for the vessel's breach of the charter party was caused by the charterer's default in loading. 50 Fed. Rep. 124, reversed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

In Admiralty. Libel in personam by the Lumberman's Mining Company against J. C. Gilchrist to recover damages for breach of a charter party. The district court entered a decree for libelant in the sum of $477.70, which, on appeal to the circuit court, was reduced to $407.40, and affirmed as thus modified. See 50 Fed. Rep. 124. Respondents appeal. Reversed.

Harvey D. Goulder, (F. H. Canfield, of counsel,) for appellants.
Henry S. Sherman, for appellee.

Before TAFT, Circuit Judge, and SAGE and SWAN, District Judges.

TAFT, Circuit Judge. This is a libel in personam against the same respondents as in the last case, (Lumberman's Min. Co. v. Gilchrist, 55 Fed Rep. 677,) for the breach of a charter party which J. C. Gilchrist, as managing owner of the schooner S. H. Foster, entered into with the Lumberman's Mining Company, to carry eight cargoes of iron ore during the season of navigation of 1886, from Escanaba, in Michigan, to ports on Lake Erie, not east of Erie; said cargoes to be distributed through said season as equally as possible, and the schooner to be constantly towed by some steamer. This charter was entered into under exactly the same circumstances as those stated with respect to the Bruce in the previous case, and contained substantially similar terms. The eight cargoes to be carried were to form part of the 30,000 tons mentioned in the original contract of February 4, 1890. The breach claimed was a failure to make the eighth trip. The other seven were either made or performance of them was waived. The master in the district court found that the trip had not been made through default of respondents, and that other tonnage had been chartered in the month of November at an increased cost of 81 cents per ton, for which respondents were liable. This finding, which was approved by the district court, was not sustained by the circuit judge, for the reason that the other tonnage obtained by the libelant between the 1st and 16th of November could not properly be said to have been secured in consequence of the Foster's default, because an agent of libelant had requested the Foster to go to Escanaba for her last cargo after the time of procuring such other tonnage. The Foster reached Escanaba late in the season, and the libelant commenced loading her under the contract, but did not finish loading her until the next spring. When she came down to Cleveland, Gilchrist says he offered to put her cargo in under the contract, and thus make the eighth trip, but that the libelant refused to accept the offer, and paid $1.35 per ton, which was the going rate of freight in the spring of 1887. The circuit judge held that the trip completed in the spring of 1887 ought to be counted under the contract, and therefore that the libelant should be allowed to recover the difference between the contract price, $1 per ton, and the $1.35 per ton which was actually paid, for which he entered a decree.

We are of opinion that this decree must be reversed. We think the evidence is very clear that the Foster went to Escanaba late in November, at the request of the libelant, on the statement of its agent that when she got to Escanaba she would be loaded. She arrived at Escanaba on the 26th of November. Had the libelant then loaded her, she could have made the eighth trip that season, because her consort, the steamer Tuttle, who towed her to Escanaba, did load and take a cargo down to Lake Erie. The libelant was bound by contract to load the Foster in four days. It did not do so. This was a breach of contract on its part for which it is no excuse now to say that performance was prevented by act of God. The agent of libelant knew, or ought to have known, that the ore was so frozen at Escanaba at the time he directed the Foster to go there that she could not load. Upon this point the evidence is clear. The libelant is, therefore, clearly estopped, having induced the Foster to go to Escanaba with the promise that she should have a load, to rely on the frozen condition of the ore as an excuse. The failure to make the eighth trip must be charged to the fault, not of the respondents, but of libelant. We do not think there is any sufficiently definite proof of damage caused by the laying up of the Foster at Escanaba during the winter to warrant a decree in favor of the respondents on their cross bill.

The judgment will be reversed, with instructions to dismiss both the libel and the cross libel, at the costs of the libelant.