## GILCHRIST et al. v. LUMBERMAN'S MIN. CO.

### (Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

### No. 36.

**1. SHIPPING—CHARTER PARTY—BREACH—WAIVER.**

Libelant chartered respondents' vessel to carry eight cargoes of iron ore from E. during a certain season of navigation, the charter allowing libelant four days to load after she reported at E. After she had taken seven cargoes, she was delayed by a cause which could not excuse her failure to make the eighth trip. But thereafter, when the season was nearly closed, and respondents did not wish to send her to E., because afraid she could not get a load before the close of the season, libelant requested them to send her, representing to them that there would be no difficulty in loading her. Relying thereon, respondents sent her, and on the fourth day after her arrival the season closed. Owing to the frozen condition of the ore at the time of the request and statement, she could not have been loaded in less than two weeks. *Held*, that libelant, by his request and misrepresentation, waived any right to hold her for her previous delay in arriving at E., and that failure to carry the eighth cargo must be attributed to the close of the season, or vis major, for which there was no liability.

**2. SAME—SELF-INFLICTED LOSSES.**

Respondents cannot recover damages of libelant on the ground that they were not permitted to take a cargo, which could have been loaded before the close of the season, from E., for other persons, as on the arrival of the vessel at E. they knew that it was impossible for libelant to load her with his iron before the close of the season, and therefore they were not obliged to wait, but were at liberty to take a cargo for other parties, and it was their own fault that they did not.

On rehearing. For former opinion, see 5 C. C. A. 244, 55 Fed. 681.

Before TAFT, Circuit Judge, and SAGE and SWAN, District Judges.

TAFT, Circuit Judge. This case has been once decided. The opinion is reported in 6 U. S. App. 607, 5 C. C. A. 244, 55 Fed. 681. In that opinion we reversed the decree of the circuit court awarding damages to the libelant and appellee, and remanded the case with instructions to dismiss both the libel and cross libel. A motion was subsequently made by the appellants to modify the order in this court so far as it directed the dismissal of the cross libel, and to direct a reference to a master to determine the damages due the appellants and respondents on their cross libel. The appellee and libellant also filed a petition for a rehearing on the merits. Both the motion and the petition must be denied.

The libel was filed to recover damages for the breach of a charter party of the schooner Foster to carry eight cargoes of iron ore from Escanaba, on Lake Superior, to the Lake Erie ports during the season of 1886. Seven cargoes were carried or provided for. The breach alleged was in the failure to carry the eighth. The eighth cargo should, by the contract, have been carried in November. The Foster was delayed nine days at Chicago, from the 17th to the 26th of that month, by the running aground of two vessels in the Chicago river. During this interval, the agent of the libelant requested the managing owner of the Foster to send her to Escanaba to carry the eighth

cargo. The latter did not wish to do so, because afraid that he could not get a load before the close of the season. The agent of the libelant assured him that if the Foster went she would be loaded. The ore which the libelant proposed to ship was soft or hematite ore. Unlike hard ore, this freezes in cold weather, and the process of loading it is then very laborious and slow. Hence, the anxiety of the Foster's owner to know whether if she went to Escanaba the libelant could and would load her. Relying on the statement of libelant's agent, the Foster did go to Escanaba, arriving there on the 26th; but the soft ore was frozen hard, and it was then impossible to load her in a less period than two weeks, which would keep the vessel in the dock until ten days after the close of navigation. It is undisputed that the ore was frozen hard on the 16th of November, and that the libelant's agent had the means of knowing this when he assured the agent of the respondents that if the Foster went to Escanaba she could be loaded. The contract provided that the libelant might have four days to load after the Foster reported at Escanaba. The season closed on November 30.

It may be conceded that the cause for the Foster's delay in the Chicago river, arising as it did while she was engaged in a trip not mentioned or contemplated in her contract with libelant, furnished no excuse for her failure to make the eighth trip. That trip, under the contract, should have been made in November; and, had she reached Escanaba early in that month, she could have secured a load, and carried it. When she was lying in the Chicago river, it was so late in the season that if she went to Escanaba there was every probability that she could not complete her contract, because of the difficulty in loading the ore, and that by going she would not only not save herself from liability in damages for failure to carry the eighth cargo that season, but would lose the time of the trip from Chicago to Escanaba, with the risk and labor attending it. If she did not go to Escanaba she would, of course, incur liability in damages for breach of the contract; but she could, as the evidence shows, use the time taken in going to Escanaba by shipping a cargo of grain from Chicago to Lake Erie ports. In this situation the libelant's agent requested the Foster to go to Escanaba, representing to her managing owner that there would be no difficulty in loading her. As a matter of fact, when this request and statement were made it was impossible for the Foster to secure a load from libelant and get down before the close of navigation, because the ore was frozen solid. The statement that the libelant could and would load her involved, therefore, a false representation, on the faith of which the Foster changed her position. If she had not a reasonable prospect of complying with her contract, she was not obliged to do a vain thing. Under these circumstances, it seems clear to us that the libelant is estopped to claim damages for the Foster's delay in reaching Escanaba. By requesting her to go so late, and by misrepresenting the important fact, knowledge of which would have prevented her going, the libelant effectually waived any right to hold her in damages for her previous delay in reaching Escanaba. But it

is said that when she did reach there the libelant still had, by the contract, four days to load, and that this period did not elapse until after the close of navigation, so that the frozen condition of the ore did not, in law, prevent the Foster from making the trip, but rather her own delay in reaching Escanaba. But, as we have said, this delay was waived by the request and statement of the libelant's agent, and respondents' subsequent failure to carry the eighth cargo must be attributed to the close of the season, or vis major, for which they were not liable. The stipulation in the contract by which the libelant was given four days to load does not affect the materiality of the misrepresentation as to the condition of the ore. It does not appear that, had the ore been unfrozen, the loading might not and would not have taken place in less than four days, and in time to have taken a trip down with a cargo. Certainly, if the owner of the Foster had known the condition of the ore, he would have been reasonably certain that he could not take the eighth cargo. In view of the impossibility of libelant's loading the Foster in four days, it is difficult to see how, in justice, it can rely on that stipulation to avoid the effect of the misrepresentation of its agent.

But, while we think that the course of the libelant's agent was such as to prevent the allowance of damages in its favor against respondents, we are equally clear that the respondents cannot establish any claim for damages against the libelant on their cross libel. They claim damages because they were compelled to lay up at Escanaba, and were not permitted to take a cargo of hard ore from Escanaba for other persons, and make a profit. When the Foster arrived at Escanaba, her master must have been at once advised that it was impossible for the libelant to load her with soft ore before the close of the season, because the ore was frozen hard. He was not obliged to wait, therefore, but was at liberty to leave Escanaba; and if, as the libel avers, he could have taken a cargo of hard ore for other parties from there, there was nothing to prevent his doing so. Instead of this, the evidence shows that the vessel was stripped and laid up two days before the season closed. Respondents cannot recover damages for losses which were self-inflicted. The motion to modify the decree and to refer to a master, and the petition for a rehearing, are both denied, and the mandate will issue at once to carry out the order of this court as originally made.