## THE OSCODA.

(District Court, N. D. New York. September 30, 1895.)

1. TOWAGE CONTRACTS—INDEFINITENESS.

It is doubtful whether an alleged oral agreement by the master of a steamer to tow a barge on the Great Lakes during an entire season, the master to pay commissions, and the barge owner to give him one-third of the gross earnings, is sufficiently explicit to be enforced.

2. SAME—DAMAGES FOR BREACH.

Where a steamer which had been towing a barge on the Great Lakes abandoned her at Buffalo, in violation of an alleged contract to tow her during the entire season, held, that no damages were recoverable, in the absence of any evidence that if she had been taken along with the steamer and her other barges to Cleveland, she would there have been able to obtain a cargo, or that she would in any event have earned more freight during the remainder of the season than she in fact did earn by employing another steamer to tow her.

Libel in rem by owner of barge Harvey Bissell to recover damages for breach of contract of towage against propeller Oscoda. Exceptions to the libel disputing the jurisdiction of the court were overruled and an exception as to the items of damage was sustained, the libelant being required to make the libel more definite and certain in this respect. The Oscoda, 66 Fed. 347. An amended libel was thereafter filed, and the cause now comes on to be heard on pleadings and proofs.

Thomas Cary Welch, for libelant.

Harvey L. Brown, for claimants.

COXE, District Judge. The cause of action stated in the amended libel is that on the 1st day of April, 1894, at Buffalo, N. Y., the libelant made a contract with the master of the Oscoda by the terms of which the latter agreed for a valuable consideration to tow the libelant's barge, the Harvey Bissell, for the entire season of 1894, to furnish the barge with cargoes and to pay all commissions and towage. The libel alleges further that on the 1st day of September, 1894, contrary to the terms of said agreement, the Oscoda abandoned the barge at Buffalo. The items of damages are stated to be, first $150 for five days' detention at Buffalo before the barge could obtain another tow boat and, second, $850 because the steamer Toledo, which libelant was compelled to employ for the remainder of the sea-

son, was not so fast a boat as the Oscoda, and a further loss of two weeks was thus occasioned.

The only witness who testifies to an agreement extending through the entire season of 1894 is the libelant himself. He says:

"I asked Captain Ryan if he wanted to tow the Bissell for the season of 1894, and we talked the matter over and he said he would tow her for the season of 1894. He said he would pay the commissions and I was to give him one-third of the gross earnings."

This, it will be observed, is not the contract as averred in the libel. The conversation took place at Saginaw and not at Buffalo and there is no agreement to furnish cargoes for the barge or to pay towage.

On the part of the claimants three witnesses who were present at the conversation deny that any such agreement was made. They testify that the master of the Oscoda only agreed to tow the Bissell from trip to trip. That the subject was talked over at length and on account of the bad business outlook he emphatically declined to be bound to any particular time and refused to tow the Bissell on any terms after navigation became dangerous in the autumn.

The burden is upon the libelant to establish the averments of the libel by a fair preponderance of proof. His version of the contract is contradicted by three witnesses who swear to a different and, with the conceded fact that the season was an exceptionally dull one, a more natural agreement. It is true that the claimants' three witnesses are interested, but so is the libelant. The court has not had the benefit of seeing the witnesses and on paper they appear equally well. Four men were present when the agreement was made. One man says it was for the entire season, the other three say that it was not. How can the court, in such circumstances, find with the one and against the three? It is true that various declarations and admissions of the master of the Oscoda are sworn to which are said to be at variance with his testimony, but proof of oral admissions is always received with caution (1 Greenl. Ev. §§ 199, 200) and in the present controversy it is insufficient to overcome the great preponderance of evidence in favor of the claimants. It is amazing that intelligent business men are willing to leave such important agreements in parol, for controversies like the present are the almost inevitable result of such carelessness.

But there is in the libelant's path another insuperable barrier. Assuming the contract to be as stated by him no damages are proved. The agreement at best is a mere skeleton. It is doubtful if it is sufficiently explicit to be enforced. The Oscoda agreed to tow the Bissell during the season of 1894 and pay commissions. The Bissell was to pay for this service one-third of her gross earnings. Who was to furnish the cargo? Was the Oscoda under obligation to tow the Bissell if she had no cargo? Could the Bissell select any cargo she saw fit and compel the Oscoda to tow her? On the other hand, could the Oscoda force a cargo upon the Bissell, ore or grain, for instance, which she was not fitted to carry? These, and many other questions which might arise, are not answered by the contract. They are obscured in doubt and are seemingly left to conjecture, al-

though under the fair and frank interpretation placed upon the contract by the libelant's proctor the decision of all important questions was lodged with the Oscoda.    In his brief he says:

"The Bissell was engaged not for a specified period and not at a specified rate per day or per voyage; she was obliged to remain with the Oscoda so long as the latter could or should navigate the lakes during the season, the ports between which she was to'voyage were unspecified and were in the discretion of the master of the Oscoda, so also was the kind of cargo she should carry and the amount of freight she should receive therefor; the commissions paid for charters for the tow were payable by the master of the Oscoda, and the only measure of the amount she would receive was two-thirds of her gross freights whatever they might be."

If this be the true construction of the contract, and the court is inclined to think it is, the Bissell was wholly at the mercy of the Oscoda.    The Oscoda could force any kind of a cargo at any price, whether remunerative or not, upon the Bissell and she was bound to accept it.    It would seem manifestly for the benefit of the barge to be released from an agreement so unilateral.

Again, the testimony as to the Bissell's pecuniary loss is exceedingly meager and is insufficient to enable the court to formulate a proper rule of damages.    It appears that the Oscoda sailed away to Cleveland leaving the Bissell at the Buffalo breakwater and that some four days elapsed before. the barge obtained another steamer.    After her arrival at Cleveland it was four or five days before the Oscoda obtained a load for the two barges which belonged regularly to her tow. It would seem then that no damages accrued by the detention at Buffalo because had the Bissell proceeded to Cleveland there would have been a still longer delay.    But there is no positive proof that she could have obtained a cargo of any kind at Cleveland.    If she had obtained a cargo would it have been more remunerative than the one she did obtain at Toledo?    What did she, in fact, earn during the balance of the season and what would she have earned had she remained with the Oscoda?    Would she have made better time in the Oscoda's tow composed of three barges than in the Toledo's tow of two?    The answers to these questions are left to guesswork and. speculation.    There is nothing which enables the court to say with accuracy that the Bissell would have been a dollar richer had she remained in the Oscoda's company.    Whether the barge was worse or better off by reason of the change of steamers is by no means certain.    It should be made certain before a decree is entered in her favor.

Although the case at bar is sui generis the measure of damages in the cases which most nearly resemble it is the amount of freight which the vessel would have earned under the agreement less the expense of earning it and less any freight earned by the vessel during the time covered by the agreement.    The Gazelle & Cargo, 128 U. S. 474, 487, 9 Sup. Ct. 139; Warren v. Stoddart, 105 U. S. 224; Watts v. Camors, 115 U. S. 353, 362, 6 Sup. Ct. 91; Steamship Co. v. Card, 59 Fed. 159; The Oregon, 5 C. C. A. 229, 55 Fed. 666; Gilchrist v. Mining Co., 5 C. C. A. 244, 55 Fed. 681; The Tribune, 3 Sumn. 144, Fed. Cas. No. 14,171; Ashburner v. Balchen, 7 N. Y. 262; Stone v. Woodruff, 28 Hun, 534.    There is not a syllable of proof which enables the

court to estimate the libelant's damages on these lines. The difficulties which surround this question are fully recognized by the libelant. His proctor says:

"The Bissell was deserted on the 1st of September while there was yet an opportunity to make several round trips with the Oscoda. What the Oscoda actually did do after that date is no criterion of what she would have done had the Bissell remained in the tow, and no satisfactory estimate can be drawn from what she did as to what the Bissell would have earned; different ports might have been necessary with a tow of three barges, better or poorer contracts for freights might have been obtained, and the whole question is one of absolute speculation."

The claim for damages is, therefore, confined to the four days' delay at the Buffalo breakwater and the delay occasioned by the alleged inferiority of the Toledo. But here, again, as before stated, there is an entire absence of the necessary facts upon which to estimate the Bissel's supposed loss, and especially so in view of the fact that there was no obligation, so far as the contract is concerned, to avoid delays of a few days or to tow at any particular rate of speed. It is expressly admitted that "had the Bissell lost this time in company with the Oscoda there would have been no cause of action."

The libel should be dismissed with costs.